**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **LISA G.[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:18cv39** |
| | ) | |
| **ANDREW SAUL[2],** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lisa G. ("Lisa") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") finding her not disabled and therefore

ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42

U.S.C. §§ 401–433. Lisa alleges that the Administrative Law Judge ("ALJ") erred by failing to

properly: (1) determine her mental residual functional capacity ("RFC"), including accounting

for her moderate impairments in concentration, persistence, or pace, and interacting with others;

(2) evaluate the opinion of her treating psychiatrist; (3) determine her RFC using a function-by-

function analysis; and (4) assess her allegations regarding her symptoms.

I agree that the ALJ failed to properly evaluate Lisa's mental RFC and conclude that the

ALJ failed to properly account for her moderate impairment in concentration, persistence, or

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Andrew Saul is now the Commissioner of Social Security and will be substituted for Nancy Berryhill as defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

pace, and thus the decision is not supported by substantial evidence. Accordingly, I

**RECOMMEND GRANTING in part** Lisa's Motion for Summary Judgment (Dkt. No. 14),

**DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), and

**REMANDING** this case for further administrative proceedings consistent with this opinion.

## <u>STANDARD OF REVIEW</u>

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Lisa failed to demonstrate that she was disabled

under the Act.[3] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and

alterations omitted). The final decision of the Commissioner will be affirmed where substantial

evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s]

meaningful review." <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is

necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); <u>see</u>

<u>also</u> <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build

an accurate and logical bridge from the evidence to his conclusion" and holding that remand was

appropriate when the ALJ failed to make "specific findings" about whether the claimant's

limitations would cause him to experience his claimed symptoms during work and if so, how

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

often) (citation omitted). In <u>Mascio</u> and <u>Monroe</u>, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. <u>Mascio</u>, 780 F.3d at 636, <u>Monroe</u>, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Lisa's RFC.

## <u>CLAIM HISTORY</u>

Lisa filed for DIB in February 2013, claiming that her disability began on January 12, 2011, due to agoraphobia, anxiety, panic disorder, social anxiety disorder, depression, post traumatic stress disorder, chronic bronchitis, large hiatal hernia, stomach problems, and nausea.[4] R. 10, 189, 207, 211. Lisa's date last insured was December 31, 2013.[5] The state agency denied Lisa's claim at the initial and reconsideration levels of administrative review. R. 75–85, 87–100. A hearing was held before ALJ David S. Lewandowski on November 30, 2016, where Lisa was represented by counsel, and vocational expert Mark Hileman testified. R. 32–55. On March 8, 2017, the ALJ entered his decision considering Lisa's claim under the familiar five-step process[6] and denying her claim for benefits. R. 10–26.

---

[4] Lisa was 44 years old on her date last insured, which is considered a younger individual under the Medical Vocational Guidelines. R. 16.

[5] Lisa must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Lisa suffered from the severe impairments of obesity, major depressive disorder, generalized anxiety disorder, panic disorder, and cluster B personality traits.[7] R. 12. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 13. Specifically, the ALJ considered listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders), as well as obesity. The ALJ found that, regarding her mental impairments, Lisa had moderate limitations in understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and adapting or managing oneself. R. 13–15.

The ALJ concluded that Lisa retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 16. Specifically, the ALJ found Lisa could understand, remember, and carry out simple instructions and perform simple, one to two step tasks, but could have no interaction with the general public, only occasional interaction with coworkers and supervisors, and should work independently instead of in tandem with others. Id. Further, Lisa could only occasionally make decisions and adapt to changes in a customary workplace setting, and could never travel as a work duty, or have strict production quotas. Id. The ALJ determined that Lisa was unable to perform her past relevant work as a restaurant owner, but that she could perform jobs that exist in significant numbers in the national economy, such as garment folder, housekeeping cleaner, and clothing bagger. R. 24–25. Thus, the ALJ concluded that Lisa was not disabled. R. 26. Lisa appealed and the Appeals Council denied her request for review on December 11, 2017. R. 1–3.

---

[7] The ALJ determined that Lisa's post traumatic stress disorder, social phobia, agoraphobia, grief, benzodiazepine dependency, and gastroesophageal reflux disease were medically determinable impairments, but were not severe impairments. R. 13

## ANALYSIS

Lisa alleges that the ALJ failed to properly: (1) determine her mental RFC, including accounting for her moderate impairments in concentration, persistence, or pace, and interacting with others; (2) evaluate the opinion of treating psychiatrist, Jitendra Desai, M.D.; (3) determine her RFC using a function-by-function analysis; and (4) assess her allegations regarding her symptoms.

### A.  Medical History

1. Mental Health Treatment

Lisa has a history of mental health complaints, reporting suffering "emotional problems since 2003" during a consultative psychological examination completed on November 9, 2010 by Bruce Sellars, Psy.D.[8] R. 308–313. She also complained of panic attacks, frequent worry, and post-traumatic stress disorder ("PTSD"). Dr. Sellars diagnosed Lisa with generalized anxiety disorder, depressive disorder, NOS with possible recurrent major depression, possible PTSD, and possible social phobia. R. 312. Lisa received treatment at Jefferson Psychiatric Behavioral Medicine ("Jefferson Psychiatric") in January 2011, shortly after her alleged onset date and was assessed with generalized anxiety disorder. R. 508. Lisa had follow-up visits in March, April and May, 2011, and was generally found to be alert, oriented, relaxed, with good eye contact, and conversing logically.[9] R. 509, 510, 511. Follow-up visits in August 2011 and July, and

---

[8] The ALJ indicated that she considered this consultative examination for "background purposes only" as it was completed prior to Lisa's alleged onset date, for a previous application for disability benefits. R. 18.

[9] In March 2011, "the matter of numerous no show appointments" to Jefferson Psychiatric was discussed and Lisa was reminded of the need to attend her monthly appointment to "optimize care and maintain stable mood." R. 509.

September 2012 were similar, though Lisa was tearful at times, struggling with issues related to her parents and children, and was assessed with panic disorder; however, she also began therapy with her pastor and reported some improvement. R. 342, 353, 354, 512.

Lisa transferred her care to Mental Health of America, presenting for her initial appointment in January 2013, where, on mental status examination, she was "friendly and cooperative," with clear and coherent speech, sad mood, fair to good insight and judgment, and above average intelligence. R. 397–98.[10] Lisa had follow-up visits at Mental Health of America in February, June, August, October, and December 2013, and February, April, and June 2014 for medication management and therapy, and the doctor described her as "stable with chronic conflicts" including panic attacks and anxiety. R. 400–408. She consistently complained of feeling anxious and depressed during these visits, with some sessions showing worse symptoms and others showing improvement.[11] Lisa was generally assigned GAF[12] scores of 52 or 53.[13] Id. Lisa also continued to follow-up with her family doctor for medication management, reporting feeling anxious and depressed. R. 360, 365, 367.[14]

---

[10] Lisa indicated that she transferred her care because she was losing her insurance. R. 351.

[11] In June 2013 Lisa complained of almost daily panic attacks and difficulty functioning. R. 401. In December 2013 and in February 2014, she was "more stable" and "more positive," respectively. R. 404, 405.

[12] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev.2000). A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

[13] Lisa received a GAF score of 54 during her June 2014 visit, where she reported some depression, but generally feeling "much better" and more optimistic. R. 407.

[14] In May 2013, she was assessed with generalized anxiety disorder and panic disorder without agoraphobia. R. 367.

2. <u>Medical Opinion Evidence</u>

In December 2013 and October 2014, respectively, state agency doctors Alan D. Entin, Ph.D. and Andrew Bockner, M.D., reviewed the record and found that Lisa had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 80, 95. Drs. Entin and Bockner both concluded that, due to anxiety, Lisa could perform simple one to two step tasks, but would have difficulty with more detailed and complex tasks, and should not be required to work around other people. R. 82–83. Dr. Bockner also found that "due to her severe anxiety" Lisa would have difficulty adapting to change and traveling to unfamiliar places. R. 98. The ALJ gave significant weight to the opinions of the state psychological consultants.[15] R. 23.

In March 2016, Jitendra Desai, M.D., completed a Medical Opinion re: Ability to do Work-Related Activities (Mental). R. 420–24. Dr. Desai indicated either marked or extreme limitations in nearly all of the mental abilities needed for unskilled work, including marked limitations in the ability to carry out,  understand, and remember very short and simple instructions, maintain attention for two-hour segments, perform at a consistent pace, and interact appropriately with the general public. R. 421.[16] Dr. Desai also concluded Lisa would be absent more than twice a month, based on his diagnoses of major severe depression and recurrent panic disorder. R. 424. The ALJ gave Dr. Desai's opinion no weight, noting that Lisa did not begin treating with him until more than a year after the date last insured, and that his opinion is "not consistent with the record." R. 23.

---

[15] The ALJ gave little weight to the state medical consultants, who found that Lisa had no severe physical impairments, writing that Lisa's "obesity is severe enough to limit her to light work." R. 22–23.

[16] The sole mild limitation Dr. Desai found involved the ability to ask simple questions or request assistance. R. 421.

### A.  Mental Impairments under SSR 96-8P

Lisa argues that the ALJ failed to properly assess her mental impairments as required by

SSR 96-8P.  See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR

96-8P (S.S.A. July 2, 1996). Specifically, Lisa asserts that the ALJ failed to properly address her

moderate limitations in concentration, persistence, or pace, and in interacting with others, in

assessing her RFC, and thus provided an incomplete hypothetical question to the vocational

expert. Lisa argues that the RFC addresses only the skill level of work she can perform – simple,

one to two step tasks – but not her ability to sustain such work over a full workday. Lisa asserts

that the ALJ's attempt to address pace by limiting Lisa to no strict production quotas is

insufficient, as it is unclear how this limitation "actually accommodates [her] moderate limitation

in pace." Pl.'s Br. Summ. J. at 5, Dkt. No. 15. Lisa also complains that the ALJ fails to explain

how her moderate limitation in interacting and relating with others results in a limitation to no

interaction with the general public, but occasional interaction with coworkers and supervisors.

Id.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the

evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-

2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).   The ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR

96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012

WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S.

Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826

F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the

evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ found that Lisa had a moderate impairment with concentration, persistence, or pace, and limited her to carrying out simple instructions, performing simple, one to two step tasks, occasional decision-making and workplace changes, and no "strict production

quotas." R. 16. Lisa alleges that the ALJ's analysis is insufficient because he failed to address

her ability to sustain work over the course of a full workday. Pl's. Br. Summ. J. at 9, Dkt. No. 15.

In <u>Thomas v. Berryhill</u>, the Court of Appeals held that the ALJ failed to adequately

explain her conclusions regarding the claimant's mental impairments, including by limiting the

claimant to no work  "requiring a production rate or demand pace" but failing to explain the

meaning of those terms. 916 F.3d 307, 312 (4th Cir. 2019), <u>as</u> <u>amended</u> (Feb. 22, 2019). The

court stated:

> . . . [T]he ALJ's evaluation of Thomas's mental impairments for purposes of the
> RFC contains too little explanation for us to meaningfully review it. Without
> further explanation, we simply cannot tell whether the RFC finding—particularly
> the portion restricting Thomas to jobs that do not require a "production rate" or
> "demand pace" — properly accounts for Thomas's moderate limitations in
> concentration, persistence, and pace.  On remand, the ALJ will need to establish
> for how long, and under what conditions, Thomas is able "to focus [her] attention
> on work activities and stay on tasks at a sustained rate."  Only then will we or any
> court be able to meaningfully review the ALJ's RFC finding.

<u>Id.</u> at n. 5. The court in <u>Thomas</u> also found error because the ALJ did not draw "explicit

conclusions about how [the claimant's] mental limitations affect her ability to perform job-

related tasks for a full workday - a benchmark established by the Administration's own

regulations." <u>Id.</u>

Similarly to <u>Thomas</u>, the ALJ here concluded that Lisa could perform simple one to two

step tasks, and carry out simple instructions, and could not have "strict production quotas," but

did not explain what the term "strict production quotas" means.[17] Significantly, the ALJ also did

---

[17] In its supplemental brief, the Commissioner asserts that "the phrase 'strict production quotas'  is more
descriptive than the phrase 'no production rate or demand pace'." Pl.'s Supp. Br. in Supp. at 5, Dkt. No. 21. I
recognize that the precise phrase used by the ALJ here, "strict production quotas," is not identical to the phrase use
by the ALJ in <u>Thomas</u> "production rate or demand pace." However, I find the phrase is also not self-explanatory,
and, as required by <u>Thomas</u>, also does not establish how long Lisa can focus on work activities or stay on task at a
sustained rate. Indeed, other cases dealing with this phrase have held it addresses concentration-related issues,
instead of pace. <u>See</u> <u>Holbrook v. Berryhill</u>, No. 3:16-CV-00713-RJC, 2018 WL 325244, at *4 (W.D.N.C. Jan. 8,
2018) (holding that "[l]imiting a claimant to strict production quotas addresses impairments to concentration-related

not discuss whether Lisa could perform the job-related tasks on a sustained basis. Regarding concentration, persistence, or pace, the ALJ acknowledged that "[e]vidence in this area of functioning concerns actions that demonstrate the ability to . . . stay on task at a sustained rate" and "work a full day" without extra rest periods. R. 14. However, the ALJ did not address these issues, merely writing:

> The medical evidence of record shows [Lisa] generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace. However, providers periodically noted [Lisa] was difficulty [sic] to keep on task and stated she was distractible due to focus on past events. At times, disordered thought content was noted as well. These limitations cause moderate limitations in concentration and pace that limit [Lisa] to simple work without strict production quotas. Though she reported she was unable to leave the house, which could cause issues with persistence, the record is not reflective of the severity of symptoms alleged by [Lisa] . . . .

R. 15. As an initial matter, the record contains multiple occasions where Lisa complained to her treating practitioners regarding maintaining concentration, persistence, or pace. For example, in June 2013, she told her family doctor that she has panic attacks on an almost daily basis, and trouble functioning on a daily basis. R. 401. In September 2013, she noted that she had been unable to continue weekly counseling because she was "too anxious to leave the house." R. 370. At the hearing, Lisa testified that she has a panic attack or is extremely nervous anytime she needs to leave the house, and has a panic attack, including shortness of breath, shakiness, and vomiting, at least four times a week, and sometimes multiple times a day. R. 37–38. Lisa also testified that she has issues with staying on task and focusing. R. 43. Further, the state agency psychological opinions, to which the ALJ gave great weight, concurred in finding that "due to

---

issues.") (citing <u>Martin v. Colvin</u>, No. 1:14-CV-234, 2015 WL 9094738, at *4, 2015 U.S. Dist. LEXIS 168689 (W.D.N.C. Dec. 16, 2015) ).

At Lisa's hearing, the vocational expert testified that, regarding the limitation to no strict production quotas, he "look[s] at jobs where primarily there's a certain amount of work that's got to be accomplished, but if you slow down your work, it doesn't impact the work of others, such as an assembly position." R. 52. Of course, this explanation does not establish how long these jobs require Lisa to focus her attention on work activities, or stay on task at a sustained rate.

interruptions from symptoms of anxiety [Lisa] would have difficulty with more detailed and complex tasks," but is able to perform simple one to two step tasks that do not require her to be around other people. R. 83, 97. However, the state agency doctors never specifically addressed her ability to perform simple one to two step tasks on a sustained basis.

Finally, this case is distinguishable from Sizemore v.Berryhill, 878 F.3d 72 (4th Cir. 2017), where the Fourth Circuit found that substantial evidence supported the ALJ's determination that the claimant, who had moderate difficulties in social functioning and in concentration, persistence, or pace, would be able to stay on task while working in low stress non-production jobs with no public contact. Id. at 79. In Sizemore, the ALJ relied on findings from state agency psychologists who found he was capable of maintaining attention for at least two hours at a time, and thus could perform basic, routine tasks on a sustained basis. Id. at 80–81. The court concluded that the opinions of these state agency doctors, "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing "simple one, two-step tasks," as long as he was "working in low stress non-production jobs with no public contact." Id. citing Mascio, 780 F.3d at 638.

In contrast, here, there is no medical opinion addressing Lisa's ability to perform work on a sustained basis, such as a finding that Lisa could sustain concentration, despite her anxiety, for any specified period of time. In short, in light of the Court of Appeals holding in Thomas v. Berryhill, the ALJ's failure here to explain what a "strict production quota" means and to establish that Lisa can perform the work set forth in the RFC on a sustained basis frustrates my ability to conduct meaningful appellate review, requiring remand.

Because I find that remand is warranted based on the ALJ's failure to properly account for Lisa's moderate impairment in concentration, persistence, or pace, Lisa's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Lisa's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Lisa's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for further consideration by the ALJ.

The Clerk is directed to transmit the record in this case Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  June 26, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge