CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 30 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beagle
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA G., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:18-CV-0039 |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on June 27, 2019, recommending that plaintiff Lisa G's ("Lisa") motion for summary judgment be granted in part, the Commissioner's motion for summary judgment be denied, and the case be remanded for further administrative proceedings. The Commissioner of Social Security has filed objections to the report and this matter is now ripe for the court's consideration.

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely

conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

3

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. The Commissioner's Objections[2]

In his objections to the R&R, the Commissioner asserts that the magistrate judge erred when he found that the ALJ failed to properly evaluate Lisa's mental residual functional capacity (RFC) and failed to account for her moderate impairment in concentration, persistence, or pace. Lisa responds that the Commissioner is making the same arguments he made in his original and supplemental briefs and that the ALJ addressed them appropriately.

The ALJ found that Lisa had severe mental impairments, namely major depressive disorder, generalized anxiety disorder, panic disorder, and cluster B personality traits. R. 12. After analyzing the evidence related to her mental impairments, the ALJ assessed Lisa's mental residual functional capacity (RFC) and found that she could understand, remember, and carry out simple instructions and perform simple, one-to-two step tasks. She could have no interaction with the general public and occasional interaction with coworkers and supervisors, but should work independently and not in tandem with others. She could occasionally make decisions and could adapt to occasional changes in a customary work place setting. She could not travel as a work duty and could not have strict production quotas. R. 16. The ALJ then concluded that Lisa could not return to her past work as a restaurant owner, but could perform the work of a garment folder, housekeeping cleaner, or clothing bagger.

The magistrate judge found that when the ALJ assessed Lisa's RFC, he failed to account for her moderate impairment in concentration, persistence, or pace. Although the ALJ limited her to "no strict production quotas," he did not explain what the term meant and did not

---

[2] Detailed facts about Lisa's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 23) and in the administrative transcript (ECF No. 8) and will not be repeated here.

5

discuss whether Lisa could perform the job-related tasks on a sustained basis. The magistrate judge found that the lack of an explanation of "strict production quotas" and the lack of a discussion of whether Lisa could perform work on a sustained basis frustrated his ability to conduct meaningful review of the ALJ decision. He recommended remanding Lisa's case for further consideration of her moderate impairment in concentration, persistence, or pace.

In Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), the Fourth Circuit noted that a proper RFC analysis has three elements: evidence, a logical explanation, and a conclusion. Id. at 311. "The second component, the ALJ's logical explanation, is just as important as the other two. . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Id., citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018). The court then pointed to four flaws in the ALJ's decision.

First, the ALJ did not draw explicit conclusions regarding how the claimant's mental limitations affected her ability to perform job-related tasks for a full workday, which is a benchmark established by Social Security regulations. Id. at 312 (citing SSR 96-8P, 1996 WL 374184 at *2 and Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Second, the ALJ did not explain sufficiently the weight she gave to various opinions in the record by health care professionals. Id. Third, the ALJ expressed the claimant's RFC first and only then concluded that the limitations caused by the impairments were consistent with her RFC. Id. (citing Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016) (stating a claimant's RFC before conducting a function-by-function analysis is an error, even though, on its own, it does not necessarily require remand)).

Finally, and relevant to Lisa's case, while the ALJ stated that the claimant could not perform work "requiring a production rate or demand pace," she did not provide sufficient information to allow the court to understand the meaning of the terms. Id. The lack of definition made it difficult to assess whether the inclusion of the limitations in her RFC was supported by substantial evidence. The Commissioner argued that "production rate" and "demand pace" were "common vocationally relevant functional limitations," but the court disagreed, finding the terms in only a small number of cases, most of which were RFC determinations by the same ALJ who had decided the claimant's case. Id. The court concluded that the combination of missteps in the RFC evaluation frustrated a reviewing court's ability to conduct a meaningful review, and required remand. Id. The court further directed that on remand, the ALJ would need to determine for how long and under what conditions the claimant would be able to focus her attention and stay on task at a sustained rate. Id. at n. 5.

In Lisa's case, the magistrate judge cited Thomas and found that the ALJ erred when he concluded that Lisa could perform simple one-to-two step tasks, carry out simple instructions, and could not have "strict production quotas," but did not explain the meaning of "strict production quotas." ECF No. 23 at 10. Nor did the ALJ discuss whether Lisa could perform the job-related tasks on a sustained basis. Id. at 11.

The magistrate judge further noted that the record contained evidence showing that Lisa would have trouble maintaining concentration, persistence, or pace, including statements she made to treating physicians, her testimony at the hearing, and the state agency psychological opinions. However, the state agency psychologists did not specifically address her ability to perform simple one-two step tasks on a sustained basis. Id. at 11-12. The

7

magistrate judge concluded that remand was warranted based on the ALJ's failure to properly account for Lisa's moderate impairment in concentration, persistence, and pace.

The Commissioner objects to the magistrate judge's decision to remand, arguing that he misread Thomas as requiring more than a "logical bridge" to facilitate judicial review and then erred by applying Thomas categorically to find that the ALJ should have defined "strict production quotas."[3] However, a review of the magistrate judge's R&R makes clear that he did not apply Thomas categorically. Rather, the magistrate judge determined that the ALJ made the same error as the ALJ did in Thomas, with the same result.

The Commissioner argues that the ALJ's finding that Lisa could do "simple work without strict production quotas" clearly connotes a work environment where an individual does not have significant and inflexible production requirements. ECF No. 24. However, that definition, notably provided by the Commissioner in his brief and not the ALJ, is not helpful, because it still is unclear what a "significant and inflexible production requirement" would be in the context of an employee limited to simple one-to-two step tasks. At the hearing, the vocational expert explained that when he said "no strict production quotas," he was looking at jobs where primarily there was a certain amount of work to be accomplished, but if a person slowed down, it would not impact the work of others, as it would in an assembly position. R. 52. While that definition goes a little way toward defining "no strict production quotas," it

---

[3] A review of the Commissioner's objections shows that the objections are the same as the arguments raised in the Commissioner's supplemental brief submitted to the magistrate judge. In some cases, entire paragraphs are repeated almost word-for-word. Compare Deft's Supp. Brief, ECF No. 21 at 1-5, with Deft's Objections, ECF No. 24 at 3-7. As discussed above in Veney, allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection makes the initial reference to the magistrate useless, wastes judicial resources, and runs contrary to the purposes of the Magistrates Act. Veney, 539 F.Supp.2d at 509. Nevertheless, the court has reviewed the R&R and conclusions of the magistrate judge de novo.

leaves unanswered the question of how much work is expected to be accomplished during the workday, which is the heart of the issue of whether a person can maintain concentration, persistence, or pace.

In this case, limiting Lisa to jobs requiring no "strict production quotas" is perhaps even more confusing than the similar restriction in Thomas, given that the ALJ concluded that Lisa could do the work of a garment folder, housekeeping cleaner, or clothing bagger. All three of those examples of work presumably require an employee to produce a certain amount of work in a particular time frame, whether it be garments folded, rooms cleaned, or clothes bagged. Without an explanation of the term "strict production quotas" from the ALJ, it is impossible to determine whether substantial evidence supports the ALJ's determination that Lisa can do the jobs listed and thus is not disabled. Accordingly, the Commissioner's objection on this issue is **OVERRULED**.

The magistrate judge further found that there was no medical opinion in the record addressing Lisa's ability to perform work on a sustained basis, such as a finding that she could sustain concentration, despite her anxiety, for any specified period of time. The magistrate judge concluded that the lack of medical evidence distinguished the case from Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017). In Sizemore the plaintiff argued that the ALJ erred in recognizing that the plaintiff had moderate difficulties with regard to concentration, persistence, or pace but did not account for the limitation when he determined that the plaintiff had the RFC to work at all exertional levels but could work only in a low stress setting defined as non-production jobs without fast-paced work and no public contact. Id. at 79. The district court upheld the denial of benefits. On appeal, the Fourth Circuit affirmed, finding

9

that state agency psychologists had provided opinions that despite his impairments, the plaintiff could generally maintain attention for at least two hours at a time to do simple, routine tasks and could show sustained attention to perform simple repetitive tasks. Id. at 80-81.

The magistrate judge found that in Lisa's case, there was no medical opinion assessing her ability to perform work on a sustained basis. The Commissioner argues that two state agency opinions in Lisa's case provided support similar to that in Sizemore. However, neither of those opinions discussed Lisa's ability to maintain concentration, persistence, or pace for an amount of time. To the contrary, both concluded only that "[d]ue to interruptions from symptoms of anxiety the claimant would have difficulty with more detailed and complex tasks. She is able to perform simple 1-2 step tasks that do not require her to be around other people." R. 82, 98. Therefore, the court **OVERRULES** the Commissioner's objection that opinions from state agency psychologists provided substantial evidence to support the ALJ's conclusion regarding Lisa's ability to maintain concentration, persistence, and pace.

The Commissioner also argues that the ALJ in Lisa's case did not make the other RFC errors noted in Thomas. However, the magistrate judge limited his review of the ALJ decision to the two issues described above. Thus, the Commissioner's other objections are not properly before the court and have not been considered.

## CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is not supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety and this case will be

remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g).

An appropriate Order will be entered.

Entered: 08-29-2019

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge